1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

```
UNITED STATES OF AMERICA       .    Criminal No. 1:21mj53
                               .
      vs.                      .    Alexandria, Virginia
                               .    February 23, 2021
FRED ASANTE,                   .    3:21 p.m.
                               .
              Defendant.       .
                               .
. . . . . . . . . . .          .
```

TRANSCRIPT OF DETENTION HEARING
BEFORE THE HONORABLE MICHAEL S. NACHMANOFF
UNITED STATES MAGISTRATE JUDGE
(Via ZoomGov Videoconference)

APPEARANCES:

FOR THE GOVERNMENT:            MARISSA R. BRODNEY, SAUSA
                               United States Attorney's Office
                               2100 Jamieson Avenue
                               Alexandria, VA 22314


FOR THE DEFENDANT:             ROBERT L. JENKINS, JR., ESQ.
                               Bynum & Jenkins PLLC
                               1010 Cameron Street
                               Alexandria, VA 22314


TRANSCRIBER:                   ANNELIESE J. THOMSON, RDR, CRR
                               U.S. District Court, Third Floor
                               401 Courthouse Square
                               Alexandria, VA 22314
                               (703)299-8595




(Pages 1 - 27)




(Proceedings recorded by FTR Gold electronic sound recording,
 transcript produced by computerized transcription.)

2

1                    P R O C E E D I N G S

2                    (Defendant present via ZoomGov.)

3            THE CLERK:  USA v. Fred Asante, Case No. 21mj53.

4    Will the parties please note their appearance.

5            MS. BRODNEY:  Good afternoon, Your Honor.  Marissa

6    Brodney for the United States.

7            THE COURT:  Good afternoon, Ms. Brodney.

8            MR. JENKINS:  Good afternoon, Your Honor.  May it

9    please the Court.  Robert Jenkins on behalf of the defendant,

10   Mr. Fred Asante.

11           THE COURT:  Good afternoon, Mr. Jenkins.

12           And good afternoon, Mr. Asante.  I see that you are

13   on mute.  I will ask you to come off mute in a moment, but

14   first let me confirm with the government, Ms. Brodney, that you

15   can see and hear the Court as well as Mr. Jenkins and the

16   defendant.

17           MS. BRODNEY:  Yes, Your Honor.

18           THE COURT:  Thank you.

19           And, Mr. Jenkins, let me confirm with you that you

20   too can see and hear the Court as well as Ms. Brodney and your

21   client.

22           MR. JENKINS:  Yes, Your Honor.

23           THE COURT:  Thank you.

24           And, Mr. Asante, let me ask you to either seek the

25   assistance of the guard to unmute or, if you can, press the

3

1    unmute button on the device in front of you so that you can

2    speak.

3              Good afternoon.  Can you hear me, Mr. Asante?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  Very good.  Let me confirm that you can

6    see and hear the Court as well as your counsel, Mr. Jenkins,

7    and counsel for the government, Ms. Brodney.

8              THE DEFENDANT:  Yes.

9              THE COURT:  Yes, very good.

10             Mr. Jenkins, before we begin, let me confirm that you

11   had the opportunity to speak with Mr. Asante and that he

12   understands he has a right to be physically present in the

13   courtroom or that he can give up or waive that right if he

14   wishes to proceed by videoconference.

15             Have you had that discussion, and does he wish to go

16   forward at this time via video?

17             MR. JENKINS:  Your Honor, we have had that

18   discussion, and Mr. Asante would like to proceed by way of

19   video.

20             THE COURT:  Thank you.

21             Mr. Asante, let me confirm, as Mr. Jenkins just said,

22   that you have been able to discuss your right to be physically

23   present with him and that you are waiving or giving up that

24   right and agreeing to participate by videoconference at this

25   time.

4

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Very good.  I find it is a knowing and

3    voluntary waiver of the right to be physically present, and we

4    can go forward with regard to this matter.

5          This matter was also continued on a Rule 40.  As I

6    understand it, Mr. Asante has waived the identity hearing.  He

7    has been indicted in the Southern District of New York and

8    therefore has no right to a preliminary hearing, so the only

9    issue before the Court is the detention.

10          Is that correct, Mr. Jenkins?

11          MR. JENKINS:  That's correct, Your Honor.

12          THE COURT:  Very good.  And are the parties ready to

13    proceed with detention at this time?

14          MS. BRODNEY:  The government is, Your Honor.

15          MR. JENKINS:  The defense as well is, Your Honor.

16          THE COURT:  Thank you.  And have both counsel

17    received the Pretrial Services report, and on the part of the

18    government, are there any objections, corrections, deletions

19    you wish to make to the report?

20          MS. BRODNEY:  The Court has received the Pretrial

21    report, Your Honor.  There is one, one thing I would note --

22    and I hear a bit of an echo.  Can you hear me okay?

23          THE COURT:  Yes.  I will ask, Mr. Asante, yes, that

24    you put yourself on mute.  Thank you.

25          Go ahead, Ms. Brodney.

5

1          MS. BRODNEY:  Thank you.  There is one (inaudible)

2   with the pretrial report that we did note which relates to

3   disclosure of assets.  In the Pretrial Services report,

4   Mr. Asante disclosed assets of $37,000.  The government is

5   aware of at least approximately $110,000 in a different bank

6   account as of Friday and another approximately -- another

7   amount of money in an M&T bank account which was not disclosed

8   in the pretrial report, which I, I will reference later in

9   summarizing some facts in argument but I would flag now in

10  response to Your Honor's question.

11         THE COURT:  Thank you.

12         Mr. Jenkins, have you had an opportunity to review

13  the report, and do you have any changes, additions, corrections

14  you wish to make?

15         MR. JENKINS:  Your Honor, I have reviewed the report

16  as well as discussed it with Mr. Asante.  We have no amendments

17  or corrections to the report to offer at this time.

18         THE COURT:  Thank you.

19         Does the government wish to offer any evidence with

20  regard to detention?

21         MS. BRODNEY:  Yes, Your Honor.  Thank you very much.

22  Preliminarily, the government would like to offer as an exhibit

23  the judgment in the prior case of the defendant, 06cr309, which

24  has been shared with both defense counsel and the Court.

25         THE COURT:  Mr. Jenkins, do you have any objections

6

1  to this exhibit being considered with regard to detention?

2          MR. JENKINS:  No objection, Your Honor.

3          THE COURT:  Thank you.  It would be -- it will be

4  admitted for that purpose then.

5          MS. BRODNEY:  Thank you.

6          THE COURT:  Is there any other evidence you wish to

7  offer by way of testimony or proffer, if you wish to do so?

8          MS. BRODNEY:  Yes, Your Honor.  Thank you.  I would

9  provide just a -- I would proffer (inaudible) factual

10 background about that particular failure to appear.

11         THE COURT:  Let me just stop you, Ms. Brodney.

12         Mr. Jenkins, if you could put yourself on mute, that

13 may help the echo that I'm hearing.

14         Go ahead, thank you.

15         MS. BRODNEY:  Thank you.  I would provide just a bit

16 of factual background about that prior failure to appear as

17 well as proffer some facts related to the current case based on

18 my communications with the Southern District of New York to

19 give a -- the Court a short summary of three points in

20 particular.

21         First, just by way of background to the prior failure

22 to appear, the defendant was arrested in 2006 in Case

23 1:05cr523, which was a drug conspiracy case, and proceeded to

24 trial.  On April 10, on 2006, when the trial was about to

25 begin, the defendant failed to appear, and a bench warrant was

7

1    issued.

2            I have been in conversation with the agent in that

3    case, and as also noted in the Pretrial Services report, the

4    defendant fled to Ghana in that instance.  My understanding is

5    that the defendant argued at some point that he fled owing to

6    concerns about his safety and possibly the safety of his family

7    relating to threats from a drug kingpin.

8            I also understand that he proactively worked to

9    negotiate his return and eventual surrender months later, but

10   the fact remains that he fled the country rather than appearing

11   before the court.

12           I understand from the case agent as well this was

13   notwithstanding his surrender of his passport and that he used

14   the passport of a family member in accessing that flight.

15   Ultimately, the defendant was convicted and sentenced to 87

16   months' imprisonment in the EDVA, and that was later reduced to

17   48 months, as I understand it, in connection with a heroin

18   conspiracy and failure to appear.

19           Separately, moving to facts that I understand based

20   off of my communications with the Southern District of New

21   York, I would highlight a short summary of three points in

22   particular:  first, that this is a scheme presently before the

23   Court involving large sums of money; second, that there is a

24   lot of prison time on the table; and third, that the defendant

25   has ties to individuals abroad and current access to large sums

8

1    of money.

2            So with respect to point 1, the allegation in New

3    York is that the defendant participated in a conspiracy that

4    was based in Ghana and committed frauds against individuals and

5    businesses in the United States relating to, among other

6    things, business e-mail compromises, romance scams, and fraud

7    schemes related to COVID-19.

8            So for the period from in or about September of 2016

9    through in or about 2020, the FBI has identified 13 bank

10   accounts held by the defendant which are controlled by him,

11   several of which have been closed, including due to fraud.

12   Many of these accounts are business accounts in the names of

13   entities such as Fog Logistics or Gold Express.

14           The government is aware of at least four additional

15   bank accounts controlled by the defendant at other banks for

16   which the government does not yet have records, but during this

17   time frame of approximately four years, these bank accounts

18   have deposits that totaled approximately $27.7 million and

19   withdrawals that totaled approximately $27.2 million, which is

20   a staggering amount of money going through these accounts, and

21   the government is not aware of any legitimate employment that

22   would account for these vast sums of money.

23           A majority of the deposits in these accounts

24   consisted of large wire transfers and cash deposits from

25   various U.S. banks, individuals, and entities who were the

9

1    victims of various fraud schemes, and in total, the FBI has

2    confirmed many of the victims and identified as many as 50

3    potential victims.

4              So with respect to point 2, prison time, the

5    defendant is facing crimes with 20-year maximum.  Using

6    conservative money laundering guideline estimates, if convicted

7    at trial, the defendant would have an offense level of 29 and

8    criminal history category of II, I believe, which would result

9    in a range of 97 to 121 months, and that is a significant

10   amount of time.

11             Thirdly, with respect to ties to individuals abroad

12   and current access to funds, the defendant has ties to

13   individuals including coconspirators who are located in Ghana,

14   where the criminal enterprise is based, as well as family in

15   Ghana, where he is from.  The defendant has transferred

16   significant amounts of money abroad; and further, the defendant

17   has traveled to Ghana within the last three months.

18             So importantly, and this goes to detention, I noted

19   earlier it appears that the defendant has at least one account

20   still open that has $110,000 in it.  The day after his arrest,

21   his wife engaged in a $20,000 transaction in that account which

22   appears related to a text that the defendant received on his

23   phone, so that indicates that the defendant does currently have

24   access to significant financial resources and that his spouse

25   appears to be involved in depositing and withdrawing funds.

1          The government is also aware of one defendant

2    involved in the same criminal enterprise as the defendant who

3    successfully fled the United States for Ghana while on

4    electronic monitoring and is yet to be located, leaving his

5    wife and children behind here in the United States.  So the

6    risk of flight there is real, and electronic monitoring is not

7    sufficient.

8          I have some points I would save for argument.  I also

9    have some clarifying points that I would make about the motion

10   for bond that was filed in this case, but I don't know if now

11   is the proper time or I should do that later.

12        THE COURT:  I'll give you an opportunity later.

13        Mr. Jenkins, is there any evidence that you wish to

14   present with regard to the issue of detention?  You are on

15   mute, Mr. Jenkins.

16        MR. JENKINS:  Thank you, Your Honor.  I believe the

17   Court has received a number of letters of support that we

18   attached to our motion for bond.

19        THE COURT:  I did, thank you, and I have had the

20   opportunity to receive -- to review all of those letters.

21        MR. JENKINS:  Your Honor, beyond those letters, with

22   respect to evidence, the defense does not have additional

23   evidence to present.

24        THE COURT:  Thank you very much.

25        So, Ms. Brodney, now we can turn to arguments, and to

11

1    the extent you want to respond or address the defendant's

2    motion or any of the attachments, this is your opportunity.

3           MS. BRODNEY:  Thank you, Your Honor.  Briefly, with

4    respect to the defendant's motion for bond, one clarifying

5    point firstly, and that is with respect to the statement about

6    Calvin Freeman in paragraph 2, that statement is correct in

7    that initially Freeman was released on conditions.  However, on

8    appeal to Judge Rakoff, Judge Rakoff ordered that Freeman be

9    detained pending trial, and this is reflected in that case's

10   documents in Case No. 21cr88 in the SDNY.  So that is one

11   discrepancy to highlight for the Court.

12          And secondly, with respect to communications appended

13   to the motion for a bond, the government would just flag that

14   it has reason to believe that two of the authors of those

15   letters appended to the motion may have received money from at

16   least one victim of a romance scheme, just to highlight that

17   for the Court's attention as well, and this just leads me to

18   tie together in, in kind of summary fashion some of the facts

19   that I raised earlier, which is certainly that the defendant's

20   prior flight to avoid prosecution in this district gives the

21   government grave concerns, the best predictor of future

22   behavior being past behavior.

23          In addition, the government would highlight that the

24   defendant's close ties abroad together with his access to

25   significant financial resources demonstrates that he has both

12

1   the means and the ability to flee, and his past history of

2   having fled to Ghana in a prior EDVA case when he was facing

3   significant prison time after having surrendered his passport

4   demonstrates that the risk of flight is real and grounded in

5   past practice.

6           And finally, as the Pretrial Services report notes,

7   there is no suitable third-party custodian who can alleviate

8   these concerns, and for that reason, the government would seek

9   detention in this case.

10          THE COURT:  Thank you very much.

11          Mr. Jenkins?

12          MR. JENKINS:  Thank you, Your Honor.  May it please

13  the Court.  Your Honor, as the Court knows, 3142(a) has a

14  number of factors for the Court to consider in determining

15  whether or not there is no set of conditions that would

16  reasonably assure the defendant's reappearance in court or the

17  safety to the community, Your Honor.  This is not a case in

18  which a presumption applies.

19          Your Honor, we would submit that there are a set of

20  conditions that could reasonably assure that the defendant

21  return as well as the safety of the community.

22          Your Honor, I'll start out with support by just

23  highlighting some additional information concerning government

24  counsel addressing Mr. Asante's failure to appear back in 2006,

25  when he had a matter pending before this Court.  While it is

13

1  true that Mr. Asante did violate his conditions of release at

2  that time by fleeing to Ghana, I think government counsel is

3  well aware because counsel for the government at that time in

4  connection with Mr. Asante's sentencing acknowledged that

5  Mr. Asante's motive for fleeing at that time was due to threats

6  that he had received from alleged coconspirators in that

7  coconspiracy.

8       Mr. Asante at that point in time was working with the

9  government.  He ultimately received a Rule 35, Your Honor.

10 That Mr. Asante out of fear did leave the country.  However,

11 once he was in Ghana, Mr. Asante contacted government agents --

12 excuse me, revealed the fact that he was in Ghana and

13 negotiated arrangements for him to self-surrender.  This is not

14 a situation where after Mr. Ghana -- Mr. Asante fled, that the

15 government had to go track him down and found him.

16      It does not excuse why he left the country; however,

17 it certainly paints it in a different light as to what occurred

18 there.  In fact, the United States continued to work with

19 Mr. Asante, and he continued to assist the United States

20 government.  They did not believe that based on his acts, that

21 he somehow so significantly impaired his credibility that they

22 no longer wanted to take advantage of the assistance that he

23 could provide; and ultimately, as government counsel notes, he

24 did receive the benefit of a Rule 35.

25      Your Honor, 3142 certainly instructs the Court to

14

1    consider the nature of the offense and the strength of the

2    evidence presented before the Court.  Of course, Mr. Asante has

3    already been indicted, but I've taken a very close review of

4    the indictment in this case, Your Honor, and barring one

5    mention of Mr. Asante on page 10, about at paragraph 18.a, it's

6    the only overt act that is alleged that Mr. Asante did anything

7    that could be evidence of his involvement in this alleged

8    criminal enterprise.

9            Yes, the indictment makes a number of sweeping

10   generalizations and conclusions about his involvement and the

11   nature of this enterprise, Your Honor, but only in that one

12   discrete paragraph does it make any allegations that would lead

13   the Court to believe that Mr. Asante himself was an active

14   participant in any fraudulent scheme or behavior, and even in

15   respect to that paragraph, if you read it, Your Honor, it

16   simply says he received $100,000.

17           Now, as the Pretrial Services report indicates,

18   Mr. Asante was operating his own business.  It's also been

19   corroborated by his wife.  He was drawing a salary, Your Honor.

20   He was filing tax returns.  He's an American citizen.

21           Your Honor, there's nothing that the government has

22   presented to the Court today or that can be gleaned from the

23   affidavit that would support government counsel's bold

24   statement that there's no legitimate sources of income for

25   Mr. Asante.

1          The Pretrial -- the contents of the Pretrial Services

2   report, which government counsel doesn't object to, is clear

3   evidence that he did have a legitimate source of income, not

4   only reported as by Mr. Asante but also by his wife.

5          Now, Your Honor, also at the time that Mr. Asante was

6   arrested on last week, February 17, I would tell the Court that

7   his home was searched at that time.  The agents found nothing

8   of evidentiary value, no records, no computers, nothing that

9   would suggest that Mr. Asante, in fact, was involved in this

10  alleged conspiracy.

11         In addition, Your Honor, you have not heard from

12  government counsel by way of proffer or argument that

13  Mr. Asante has made any statement that would implicate him in

14  this alleged scheme.

15         So, Your Honor, we don't believe that the evidence as

16  proffered or gleaned from the, from the indictment would lead

17  the Court to conclude that there is strong evidence that

18  Mr. Asante has been involved in this alleged conspiracy.  We

19  concede that clearly by the indictment, probable cause has been

20  satisfied, but 3142 speaks to the strength of the evidence, not

21  merely probable cause.

22         With respect, Your Honor, to danger to the community,

23  much like the previous case, Your Honor, this is a case

24  involving an alleged potential fraud scheme.  This is not a,

25  any allegations of crime of violence, possession of firearms,

1  or anything of that nature.  I simply don't believe that

2  there's any evidence before the Court and none has been argued

3  by government counsel to suggest otherwise that Mr. Asante is a

4  danger to the community.

5       Your Honor, we do believe that his wife would be a

6  suitable third-party custodian.  The only reason why Pretrial

7  Services raises the specter that she may not be is because

8  government counsel has reported that her name may have appeared

9  on more than one bank account with her husband.  I don't think

10 that alone, Your Honor, should be a sufficient basis to

11 disqualify her.

12      Also, I will report to the Court and I believe

13 government counsel is well aware that the government has

14 already initiated actions to freeze those accounts.  Mr. Asante

15 nor his wife any longer have access to those funds and those

16 resources.

17      Your Honor, with respect to any discrepancy between

18 what Mr. Asante reported as to what his financial resources

19 were and that what the government has proffered, I believe

20 Mr. Asante was responding to Pretrial Services' inquiry

21 concerning his personal assets and not necessarily those of his

22 business entities, and that's all that he was reporting, Your

23 Honor.  He reported what he had in his retirement account, what

24 he had in his personal checking account, any assets that he

25 held in his name alone.

17

1          Obviously, Mr. Asante also at the same time reported

2    the fact that he did run his own business.  He gave the names

3    of the businesses.  He wasn't trying to be deceptive at all

4    with respect to that, Your Honor.

5          And the mere fact that his wife may have assisted at

6    this moment in time, Your Honor, when he finds himself in need

7    of counsel, when he finds himself charged with five very

8    serious felony offenses in the Southern District of New York,

9    that she may have made efforts to withdraw a certain sum of

10   money post his arrest, Your Honor, I think the Court can

11   understand what that may have been connected to, and nothing

12   nefarious can be attached to the mere fact that she was

13   continuing to do what she could to assist her husband.

14         As the Pretrial Services report indicates, he's a

15   father.  He's a husband.  He has substantial contacts here to

16   Virginia.  I think the letters all bear that out, Your Honor.

17         While he has -- as the Court has already noted in

18   past action, this is not about his contacts with Southern

19   District of New York.  If the Court were to grant bond in this

20   case, it would be expected that Mr. Asante would be supervised

21   here in the Eastern District of Virginia, and there's clear

22   evidence to believe that he has substantial contacts here to

23   the Eastern District of Virginia.

24         And while government counsel notes his performance on

25   Pretrial Services during the pendency of a 2006 case,

18

1    government counsel failed to point out to the Court how he

2    performed when he was on supervised release once he was

3    released from custody.

4             He was ordered to serve four years of supervised

5    release, Your Honor.  He did not have one violation during that

6    entire period of time.  He was not on electronic monitoring at

7    that time.  However, Your Honor, he behaved so exemplary that,

8    in fact, his petition for early termination was granted, for

9    early termination was granted, and I think that speaks more

10   clearly as to the individual that you have before you here

11   today.

12            At the time when he was originally before this Court,

13   Your Honor, it was for an offense that he participated in at

14   the age of 19.  He was 20 years old at the time he made the

15   unfortunate decision under great pressure, threat of physical

16   harm to himself and to family members, to flee to Ghana, but to

17   his credit, Your Honor, to his credit, he took the right step

18   of contacting law enforcement and turning himself in, Your

19   Honor.

20            So for all of those reasons, we do believe, Your

21   Honor, that the conditions that we have offered to the Court,

22   I'm very glad to hear in his previous case that electronic

23   monitoring is possible, because we do believe, Your Honor, that

24   electronic monitoring or GPS would give the Court greater level

25   of assurances that Mr. Asante will not repeat what occurred in

1    2006 and that this Court can be assured that Mr. Asante is not

2    a flight risk, Your Honor.

3          So for all of those reasons, we would ask that the

4    Court adopt the conditions that we proposed in our motion, to

5    include electronic monitoring with GPS, essentially house

6    arrest.  Mr. Asante works from home, Your Honor, at his home

7    residence.  He does not have access to those substantial funds

8    that were once in his account.  He's a man of modest means at

9    this point in time, Your Honor.  So we do believe that those

10   conditions would be adequate.

11         THE COURT:  Mr. Jenkins, let me just ask one

12   question.  I've tried to listen carefully to everything that

13   you've said.  In looking at the Pretrial Services report, if

14   you look at pages 4 and 5, which address his prior conviction,

15   I want to make sure I'm understanding chronologically what's

16   happened.

17         And I understand what you're telling me about his

18   cooperation and ultimately the government filing a Rule 35 on

19   his behalf, but there was an initial charge of conspiracy to

20   import one kilogram of heroin.  He was placed on bond.  He then

21   fled, and I understand your argument that it was based on

22   concerns and fear, and he went to, to Ghana.

23         There then seems to be two further charges:  the

24   failure to appear for violation of the bond and also

25   importation of 100 grams or more of heroin, and there's a note

20

1     that reflects that after arriving in Ghana, he then sent a

2     further package of heroin back to the United States, and this

3     was part of the guilty plea that he entered in, in 2006.

4              I want to make sure that I'm understanding that

5     correctly.  You are on mute.

6              MR. JENKINS:  Yes, Your Honor.  Thank you, Your

7     Honor.  Your Honor, first, my understanding is that the flee to

8     Ghana was the failure to appear prior to the commencement of

9     his trial, that that was just one event.

10             Secondly, Your Honor, with respect to this allegation

11    that he sent a package back, I spoke with Mr. Asante.  He

12    denies that.  He says that did not occur.

13             Your Honor, I don't have anything beyond that to

14    support his denial of it, but he tells me that simply did not

15    occur, that yes, he did flee and -- that he did flee, and, as I

16    said, he did return on his own, Your Honor.

17             THE COURT:  Thank you.  Thank you.

18             Ms. Brodney, is there anything else you would like to

19    argue before the Court rules on this matter?

20             MS. BRODNEY:  Yes, Your Honor.  Thank you very much.

21    First is to address defense counsel's statement that with

22    respect to defendant's spouse, regarding characterization of

23    her involvement as no more than a cosigner on accounts, but

24    that does not adequately reflect information that the

25    government understands at this time, Your Honor.

1          Yes, the government understands that Mr. Asante's

2    wife was a cosigner on several accounts, one of which belonged

3    to Fog Logistics and was used to launder proceeds as part of

4    the scheme alleged in this case, but also, there are, there are

5    several instances where Mr. Asante's wife conducted

6    transactions, in the Apple FCU account in particular, which is

7    a Fog Logistics account, for sizable sums of money, again in

8    connection with this scheme.

9          In addition, as --

10          THE COURT:  Let me, let me interrupt you for one

11    moment to try and clarify something else.

12          MS. BRODNEY:  Yes.

13          THE COURT:  You made reference to $27 million in 13

14    bank accounts.

15          MS. BRODNEY:  Right.

16          THE COURT:  Is that in the conspiracy as a whole

17    amongst all the codefendants, or are you suggesting that

18    Mr. Asante was responsible for 13 bank accounts that were in

19    his name or in his companies' names?

20          MS. BRODNEY:  My understanding is that from the

21    period from September of 2016 through in or about 2020, the FBI

22    identified 13 bank accounts held by the defendant which are

23    controlled by the defendant.  Nine of those accounts are

24    business bank accounts in the name of his company, Fog

25    Logistics, at six different banks.  Three of the accounts are

22

1    personal accounts.  One of the accounts is a business bank

2    account in the name of a company owned by the defendant called

3    Gold Express.

4            And that during the time frame of these four years,

5    these bank accounts had deposits that totaled approximately

6    $27.7 million and withdrawals that totaled approximately $27.2

7    million.  That is my understanding and based on my

8    conversations with the Southern District of New York.

9            THE COURT:  Thank you.

10            MS. BRODNEY:  But, but just returning very briefly to

11    one final point about the defendant's wife, so in information

12    that we have -- that I understand as well, and that is

13    relevant, agents identified, for instance, one romance scam

14    victim who sent money to accounts belonging to the defendant as

15    well as an account belonging to the defendant's wife, and the

16    FBI had not previously been aware of this account belonging to

17    the defendant's wife before uncovering this information very

18    recently, and that would go to the point of saying that it is

19    difficult for the government to say at this moment in time that

20    we know of every bank account where the, where the defendant

21    has the ability to access money under his control.

22            So it is -- that, that is one example of an instance

23    where there were funds available that the government only

24    recently realized belonged or in some way were controlled by a

25    member of the defendant's family connected to a scheme where

23

1    the defendant was inherently involved.  So I would, I would

2    just raise those points.

3           And to the, to the point about the defendant's prior

4    flight having occurred years ago, the government would just

5    highlight that in the intervening years, the defendant has been

6    accused of participation in a vast conspiracy crossing

7    continents.  So to the extent that there may be an insinuation

8    that all lessons were learned, the government would just point

9    out the nature of the current charges.

10           THE COURT:  Thank you.

11           MR. JENKINS:  Your Honor, if I could just respond

12    just to one issue that the Court raised with government

13    counsel?

14           THE COURT:  You may.

15           MR. JENKINS:  Your Honor, while I understand what,

16    what counsel has represented about the total amount of money

17    involved in the scheme, and I wasn't prepared, so I can send

18    this over to the Court to take a look at if the Court needs to,

19    but in the Department of Justice's own press release, it

20    alleges that the total amount of fraud that was involved in

21    this case was $24 million, and that's their press release dated

22    February 17, 2021.

23           So I, you know, I don't know because I don't have any

24    of the discovery in front of me.  I could just go by what that

25    public statement indicates, which seems to be in conflict with

24

1    what counsel is representing here right now.

2              THE COURT:  Thank you.

3              MS. BRODNEY:  Your Honor, just if I could respond to

4    that very briefly?

5              THE COURT:  Well, it's your own funeral, Ms. Brodney.

6    If you insist.

7              MS. BRODNEY:  I, I, I will decline in that case.

8              THE COURT:  Thank you.

9              This matter comes before the Court on defendant's

10   request for release, and the Court's decision is governed by

11   the Bail Reform Act, Section 3142.  This is not a presumption

12   case, and if the Court can fashion conditions of release that

13   address both risk of flight and danger to the community, then

14   the Court must, must do so.

15             I've listened carefully to the arguments of counsel,

16   and I appreciate the efforts to educate me about the issues.  I

17   have reviewed the material submitted by the government and by

18   the defense.  I want to acknowledge the community support that

19   Mr. Asante has and from his church.  I have read those letters,

20   and he is clearly respected within his community.

21             I have also looked very carefully at the Pretrial

22   Services' report and focused on all of it but in particular his

23   past criminal history and his past performance under

24   supervision.

25             The defense has made certainly a valid argument that

1    he was a young man at the time, that he was motivated in part

2    in disobeying the court's orders and fleeing the country out of

3    fear, that he continued to cooperate to try and assist himself

4    and others, returned and pled guilty and then successfully

5    completed supervision.

6            However, the Court cannot ignore the past, and to the

7    extent he now faces serious charges of a totally different

8    nature, and the government is not arguing a danger to the

9    community as it would certainly if this was another heroin case

10   or a case involving allegations of violence, it is a very

11   serious case, and frankly, whether it is 24 million or 55

12   million or something in between, it involves allegedly an

13   enormous amount of money.

14           And to the extent Mr. Asante did not learn from his

15   prior experience about the dangers of becoming involved in

16   criminal activity, that is to his detriment.

17           But as I review his community ties and balance that

18   against the nature of the offense, his strong connections to

19   Ghana, the nature of the conspiracy and the other factors, I do

20   conclude that there is no combination of conditions even

21   looking at this in the most generous way that can reasonably

22   assure his appearance in court in the Southern District of New

23   York.

24           The amount of money, the number of his accounts, the

25   allegations about the amounts of money, even if I take into

26

1    account, Mr. Jenkins, your point as to the press releases,

2    suggest that his motivation to flee, his past history of having

3    fled, the serious consequences that he faced, all prevent the

4    Court, even with the use of electronic monitoring or GPS and

5    home detention, of reasonably assuring his appearance in court,

6    and accordingly, detention will be denied at this time.

7          Mr. Asante, I will require that the marshals

8    transport you as quickly as possible to the Southern District

9    of New York, where you will address the substance of this case,

10    and until then, you will remain in the custody of the United

11    States marshals.

12          Is there anything else I need to address on the part

13    of the government, Ms. Brodney?

14          MS. BRODNEY:  No, Your Honor.  Thank you.

15          THE COURT:  Mr. Jenkins, is there anything else on

16    the part of the defense?

17          MR. JENKINS:  No, Your Honor.  Thank you.

18          THE COURT:  Thank you very much.

19          And, Mr. Asante, if you will let the guards know that

20    this matter is concluded, they will take you back.

21          And we will conclude court now, and you may leave the

22    Zoom.  Court will be in recess.  Thank you.

23                              (Which were all the proceedings

24                               had at this time.)

25

27

1      CERTIFICATE OF THE TRANSCRIBER

2          I certify that the foregoing transcript of proceedings was

3    prepared from an FTR Gold audio recording of proceedings in the

4    above-entitled matter and was produced to the best of my

5    ability.  Inaudible indications in the transcript indicate that

6    the audio captured was not clear enough for this transcriber to

7    attest to its accuracy.

8

9                                    _____
                                              /s/
10                                       Anneliese J. Thomson

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25